May it please the Court, good morning, Your Honors. Dennis McLaughlin for the City Attorney, representing Officer Massie, Tucson City Attorney. I would like to recognize the skillful briefing of my colleagues Viola Romero on the opening brief and Michelle Saavedra on the reply brief. With Your Honor's discretion and consistent with our colloquy, I would like to reserve two minutes for rebuttal. Keep your eye on the clock. I will do that. Qualified immunity case, Your Honors are well aware of the standard, a two-pronged standard. There needs to have been a constitutional violation and it needs to be clearly established in law at the time that the events occurred. Neither of those have been met here. This case is two and a plaintiffs have never brought any case forward that actually makes clear that this would have been a violation for what the officer did. Can you tell me what level of specificity is required to meet that prong? Does it have to be a case that says hypothetically slamming a woman's face into a palm tree is a violation of the Constitution? But if the next case is slamming the face into a pine tree, do you have to have a pine tree case? What is the level of specificity? Your Honor, what I understand the level of specificity to be is you don't have to have clear, all that the Supreme Court has said is you don't have to have clear precedent that's exactly on point. But it has to be reasonably clear, excuse me, I would say more than reasonably clear to a reasonable officer that what he or she is doing is wrong. And we do not have that in this case. I understand your concern. We do not have that in this case. We have a situation where a woman is in the median. She's intoxicated. She's antagonistic. She's uncooperative. She won't move away from the person she's with, which means that, and she won't give identification. So the officers can't investigate anything of what they are suspecting. Moreover... What were they suspecting? It's unclear to me. Either possibly domestic violence, Your Honor, or underage drinking. How old was she? I didn't even... If you look at the pictures, which I think are ER39... The ones with the big gashes on her head? Yes. She's 22. I believe she's 22 at the time. But she's one of those lucky people that it's hard to tell how old she is, whether she's younger or older. But it sounds as though in this instance, under your argument, she's not lucky at all, because you're using that against her. That's true, Your Honor, but that's right. But the point is, the officers don't know when they're investigating whether she's underage, and that's one of the things they're looking for. I do want to emphasize, Your Honor... I don't think there's any serious dispute that they had some ground for the arrest. I mean, just the refusal... I don't think that's part of the fight. Right, or detention. The court actually found that there was reasonable grounds for the detention, and there's been no appeal. Right, right. So, now, what does the officer do? It's a median of one of Tucson's busiest streets. There's traffic going by both ways. He's got to think about her. He's got to think about safety of the officers. He's got to think about the safety of the public. So, what does he do? Well, one of the reasonable things that he can do is, and probably, we argue, the best thing he can do is take physical control of her and get her off that median. Of course, but according to her evidence, one of the things he does is shove her face into the bark of the palm tree. That's not getting her under control and getting her off the median. That's something distinct. So, her evidence is, he deliberately pushed me into the palm tree and caused me injury. So, that's what you've got to contend with. Right. So, obviously, Your Honor, we don't agree with that, but you're dealing with what she's alleging. Well, it's her statement. It's her evidence. Right. But what she does, she talks about being pushed or shoved into the palm tree by his body weight, E104, her deposition at 28 lines, 24th and 25. I just want to make sure we're on the same page. This is not a shove like, I'm going to shove you into this tree. He is trying to get handcuffs on her. And he's pushing her forward. And that's how she's ending up into the tree. And her head is going, she also says her head is going between the tree, and she's getting scratched on her face and her shoulders. Everything you're saying, though, may be true, but it sounds like you're making a jury argument right now. That's the concern that I have. The problem with that, Your Honor, is if you go to the second prong, there's nothing in the law that says that what he did is wrong. Well, I'm not sure about that. The law says you can't use excessive force. And, I mean, maybe I'm viewing this way too... In particular circumstances, excuse me. Well, right. Well, I think excessive force is defined differently in particular circumstances. But it's clear you can't use excessive force. And so the question here is, when you're arresting someone, how much force is excessive? And maybe I'm looking at this too simple, but when somebody ends up with a big gash on their forehead and on their arm, it suggests that the force might have been excessive. Or at least enough that you can go to a jury. She's at the palm tree. We didn't put her at the palm tree. And when he goes to handcuff her, that's where she ends up being, is this palm tree. It's not like... And what he's interested in is handcuffing her and getting her under control. Yeah, but thousands, hundreds of thousands, perhaps, of handcuffings take place without ending up with this kind of injury. Well, it's where she was. I would dare say that there's a lot of handcuffs that take place near palm trees that still don't end up with medical attention necessary. Well, Your Honor, the fact is she started with Tejas leaning against the palm tree and she's standing next to him. And she's noncompliant and arguing with the officers, not giving ID. And she's on a median. And he has to make this split-second decision, basically, of what he's going to do. And what he does is says, I'm going to get you under control physically. I'm going to take you physically and get you handcuffed. And it's minimal force. It's body weight and handcuffs under the Lukdal case and, Your Honor, the Chaney case that I cited in Supplemental Court. There's no batons. There's no tasers. There's no knee strikes. There's no pepper spray. There's no kicks. There's no punches. There's none of that. Why not try the case? Because how does the level of specificity get established in the absence of trials? There are obviously fact questions here. You have one version. She has one version. Why not try the case and let the jury decide under appropriate instructions? Because under the second prong, there's nothing that says that what he did was unconstitutional. I think Judge Nelson pointed out there's lots of case law on excessive force. There is, but there's none of them that are that specific to this situation. And I sort of disagree on that because I think, I mean, the principle, and by the way, I'm very sensitive to your arguments as a general matter. I understand, Your Honor. That's why we're here. But it seems to me that excessive force, when you're handcuffing someone, at least my understanding of it, and again, I may be off base, but my understanding of it is when they complain about excessive force in handcuffing, usually what's required by the courts is to show some sort of medical attention necessary. And that's how you distinguish between true, just made up claims, because I'm sure that handcuffing someone is uncomfortable, detaining someone is uncomfortable, but when it reaches the level where you need medical attention, that is to me where that line is, where there's at least a body of law that makes it clearly established that this, at least arguably, is excessive force. Now, you may well win before a jury. I mean, I don't know all the details of how much she was resisting and things like that, but it seems to me that when there's medical attention required, that's where the line is. Disabuse me of my notion. There was, the only medical attention that was required here, Your Honor, was one visit where she got, I believe, some topical ointments. There was nothing else that she did. Oh, yeah, but, I mean, you've seen the pictures. I mean, I would also point out, Your Honor, that under Lukedal, the fact that there's injury doesn't mean it's excessive force. That's not, that is not a proper logical analysis, according to Judge Gould in that case. Okay. Of course, that's right. Now, I'm not taking this comment out of your time. It seems to me that this is an example as to the waste of the interlocutory appeal. This would have taken you, what, a day's trial, and you would have won. You're likely to win if we send it back. Meanwhile, we've got delay, we've got appellate briefing, we've got a whole panoply of stuff we're doing, and you could have just tried this darn case. That's just a comment, and let's hear it from the other side. You wanted to preserve two minutes. We'll give you two. Yes, thank you. We've taken you over, but we'll give you two minutes. Thank you. May it please the Court. Good morning. My name is Damian Gallagher, and I'm here for Ms. Mina, the appellee. I'd like to start at the point that Judge Molloy noted that this case is coming down to whether it's a pine tree or a palm tree, and that simply is not the law within the Supreme Court nor this circuit. As it was clearly established in 2016 as it is today, that an officer may not employ non-trivial force against an individual who is not resisting arrestive nor passively resisting arrest. So how do we determine whether it's non-trivial force? I mean, can we look to the injuries? Is that determinative or is it not determinative? Your Honor, in evaluating whether or not the force is trivial or non-trivial, it of course is a reasonableness inquiry under the Fourth Amendment, but typically in the excessive force context, it's evaluating whether or not that force was necessary and the degree of that force was necessary in effectuating that arrest. And here it was non-trivial because Officer Massey had Ms. Mina within his custody when he was handcuffing her, and once he pinched his hands in the handcuffing, that's when he retaliated against her by thrusting or shoving or whichever verb this Court chooses to adopt, and threw her into a tree where, as this Court has noted, she was bleeding and had scrapes on her face and shoulders. Well, how do you establish the level of specificity? And I refer to my colleague's concurrence in the Green case talking about the U.S. Supreme Court articulating that it can't be at a level of generality, but it doesn't have to be a case directly on point. How do you balance those things so we can figure out whether or not there is qualified immunity? Your Honor, this Court in Ossolinsky, as well as the Supreme Court in Anderson, has noted that a law is clearly established when a reasonable officer would understand the contours of the those contours. And here, we have defined this at a level of specificity, that an officer may not employ non-trivial force against an individual who is not passively resisting arrest. This Court has made that clear in Grave Leblondon. And if I may, Your Honor, this Court has stated, though these cases do not concern tasers, they need not, citing Diorle, it does not matter, and that no case of this Court directly addresses the use of that particular weapon. We have held that an officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury. And in Grave Leblondon and Meredith, whether it's a taser or whether it's handcuffing, this Court has focused on the degree and necessity of that force, not the particular weapon. And additionally, this Court has focused that, in Mendoza, that the very act in question does not have to be previously established. Again, relying on the legal principles and the holdings from this Court, not the particular weapon. No, the excessive force cases we're accustomed to seeing, they're almost all gunshots. I've never seen a case, an excessive force case, where the injuries were so minor. Are there any other cases of which you're aware where the excessive force resulted in injuries of this sort? I mean, I don't want to put them aside in the sense that there was no injury, there was clearly injury, we see the photographs and so on, but are there other excessive force cases in which the injuries were of this sort? Yes, Your Honor, in Meredith, there was a tight handcuffing case, and there the injuries were scratches on the wrist, I believe, and it's almost similar to the ones in the case at Barr, although it does seem that the injuries that Ms. Mina suffered were rather bloody and uncomfortable, but it's also worth noting to stress that her injuries are not only physical, but they're also emotional and psychological damage as a result of this incident. Well, but can we – I mean, is there any case law that suggests we can consider the emotional and psychological damages? Your Honor, I don't believe, within my knowledge of this circuit, addressing that on appeal, but the inquiry into whether or not the Fourth Amendment right was violated has not focused on the resulting injury, but rather the violation itself and whether or not the officer's conduct violated that Fourth Amendment inquiry. And this Court has approached that with a balancing approach in Miller v. Clark County by identifying first the intrusion onto the Fourth Amendment right and balancing that against the government's important interest. And here it is, of course, our position that when Officer Massey employed this push, shove, thrust of Ms. Mina into the tree, that any government interest that they attempt to rely on under the Graham factors, whether it's the severity of the crime, whether it's a concern for her safety, all weigh in favor of Ms. Massey – or Ms. Mina, given the fact that, Your Honor, she was charged with Arizona Statute 1324.12a for failing to provide her name. And counsel for appellant even admitted, as well in briefing, that Officer Massey only asked for her I.D., but then admitted that she did not provide the I.D., but the law doesn't require physical I.D. Does the nature of the offense have any corresponding relation to this? Meaning if they had a reasonable suspicion that she had drugs on her or a weapon on her, would that change the analysis? Here it's just failure to show I.D., as you mentioned. Does that change the analysis here on the excessive force that could be used? Your Honor, it could, because it is a factor, and it is a factor to be considered. However, this Court, in cases of misdemeanors, obstruction to justice, domestic violence, and even certainly in this case with failing to provide one's legal name, has hardly warranted the need for force because the offenses are minor and because these offenses are not violent. In the Meredith case, as I mentioned before, Your Honors, that was – they were And so, yes, Your Honor, it could be a factor, but because here, at most, I mean, it is a misdemeanor. But one, we do believe that Ms. Mina didn't violate this law, and Officer Massey in his deposition admitted that he never asked her for her name. He only asked for her I.D., and therefore not even violating the law. And so to the extent that Officer Massey used force that was not necessary, this force was not – was nontrivial and violated Ms. Mina's constitutional right, and because this was clearly established in 2016 as it is today, we respectfully ask this Court to affirm if the Court does not have any further questions. Okay, thank you very much. I do have one further question, and this is for the courtroom. You're a law student? That's correct, Your Honor. And where are you a law student? I'm a third-year student at William & Mary Law School. Okay, thank you very much, and we would like to compliment you on the quality of your presentation. I'll compliment you, too, but you do this for a living. Yes. Thank you, Your Honor. Thank you. Two minutes on the clock, please. Very quickly, Your Honor. He mentioned Gravela and Meredith, both bystander cases. I just want to make clear. Gravela itself said there's a difference between a bystander and someone who is, quote, integrally involved in the volatile situation to which officers were responding. Meredith. I'm with you on that. I agree with you on that, although, again, I guess I'd just ask you the question. She's charged with not showing her ID. That seems pretty low on the totem pole, maybe not a bystander, but maybe one step above a bystander. Sure, but they're investigating possible domestic violence and underage drinking. Not from her? She's on the median with her case. Oh, yeah, I see. When they go to the median and need to get her off the median, those are the crimes. I would just, very quickly, Your Honor, an en banc case called Matos v. Aguarano that this court has decided, where domestic violence is the volatility of those situations is recognized and the great danger of them is recognized. So this is not just she didn't show ID. There were serious matters to be looked at. I'd also mention just Parker. Parker only said in 2018 that a shove would not be, there was nothing to say it would be a constitutional violation. Clearly, in 2016, that's also the case. So we're always back to this second prong, and that's where we think we win. I will finish with simply saying I also want to compliment my opponent for his argument. We think the evidence, if you look at Mina's testimony, there is no case law that says there was a constitutional violation here that would have put the officer on notice, and we ask that you reverse. And I simply want to say that however uncomfortable I was, I enjoyed our colloquy. Thank you. Thank you. Thank both sides for their very good arguments. Mina v. Massey, submitted.
judges: W. Fletcher, R. Nelson, Molloy